IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ISLAND INTELLECTUAL PROPERTY LLC, § § *Plaintiff*, § § v. § § TD AMERITRADE, INC. ET AL., § § *Defendants*. § | Case No. 2:21-CV-00273-JRG-RSP |

**REPORT AND RECOMMENDATION**

Before the Court, defendants[1] move for summary judgment to invalidate the patent claims in suit for claiming patent-ineligible subject matter. Dkt. No. 92. For the following reasons, the undersigned **RECOMMENDS** that the motion be **GRANTED**.

**I.     Background**

Island Intellectual Property, LLC filed suit against defendants alleging infringement of claim 1 of U.S. Patent No. 7,509,286 ("'286 Patent"), claim 18 of U.S. Patent No. 7,519,551 ("'551 Patent"), and claims 19 and 25 of U.S. Patent No. 7,933,821 ("'821 Patent").[2] Each patent is a continuation-in-part claiming priority to parent application No. 09/176,340 filed on October 21, 1998, now issued as U.S. Patent No. 6,374,231.

Generally, the '551 Patent describes a method of pooling individual funds held in demand accounts into an aggregated FDIC account in order to obtain the higher interest rates associated

---

[1] TD Ameritrade Clearing, Inc.; TD Ameritrade Holding Corp.; TD Ameritrade Trust Company; TD Ameritrade, Inc.; and The Charles Schwab Corporation

[2] The complaint asserted infringement of other claims. However, prior to the undersigned reaching the merits of the instant motion, the parties notified the Court that Island withdrew some of the previously asserted claims. See Dkt. No. 182. Accordingly, this report and recommendation is limited to the remaining claims in dispute.

1

with FDIC-insured and interest-bearing deposit accounts without the withdrawal limits associated with the same. The method allows clients, or the bank, to capitalize upon higher interest rates without limiting the number of withdrawals a client may make from the individual funds. Claim 18 of the '551 Patent reads:

> A computer-implemented method for managing funds for a plurality of client accounts for a plurality of clients whose funds were accepted for deposit in respective client accounts held in the names of the respective clients at a first banking institution that includes a first bank in its infrastructure, the method comprising:
> (a) maintaining a plurality of FDIC-insured and interest-bearing aggregated deposit accounts, each aggregated deposit account held in a different respective bank of a different respective banking institution including an FDIC-insured and interest-bearing aggregated deposit account held at the first bank in the first banking institution;
> (b) maintaining or having maintained an electronic database, on one or more computer-readable media, containing information on funds held by each client in the plurality of aggregated deposit accounts;
> (c) administering the aggregated deposit accounts to transfer or have transferred client funds that had been accepted into respective client accounts held in the names of the respective clients at the first banking institution to the aggregated deposit account at the first bank except that for clients with a balance of funds in the aggregated deposit account at the first bank that equal or exceed a specified amount depositing or having deposited additional funds of that client to one of the aggregated deposit accounts in one of the different banks in one of the different banking institutions;
> (d) withdrawing or having withdrawn client funds from the FDIC-insured and interest-bearing aggregated deposit account held at one of the banks of one of the banking institutions more than six (6) times during a month while preserving an insured and interest-bearing status of the FDIC-insured and interest-bearing aggregated deposit account held at the one bank; and
> (e) updating or having updated the electronic database based on the transfers to and withdrawals in the plurality of aggregated deposit accounts.

'551 Patent 12:22-59. Stripped of excessive verbiage, the method requires: (a) maintaining several aggregate FDIC accounts held in a first bank institution and in at least one other different bank; (b) maintaining a database containing information on each client's funds; (c) transferring client funds up to a specified amount into the aggregate FDIC account maintained by the first banking

institution and transferring excess client funds into the aggregate FDIC account maintained by a different bank; (d) withdrawing funds from the FDIC accounts more than six times during a month; and (e) updating the database based upon transfers and withdrawals. *Id*.

The '821 Patent is a continuation of the '551 Patent. Island describes claim 19 as generally directed to the same process claimed in the '551 Patent with three additional caveats: (1) the first banking institution includes a first bank infrastructure, '821 Patent 14:19-20,[3] (2) the at least one other different banking institution is instead a plurality of banks of a plurality of banking institutions, *id* at 14:26-27, and (3) allocating client funds into aggregate FDIC accounts maintained by the first banking institution and at least one of the different banking institutions without reference to a specific amount maintained in the aggregate FDIC account of the first banking institution, *id* at 14:35-43. Dkt. No. 114 p 11. Claim 25, dependent on claim 19, adds the step of enabling client access to its account data via the internet. '821 Patent 15:30-35

The '286 Patent as mentioned above derives from the same parent. Generally, the method described by claim 1 of the '286 Patent includes the limitations of claim 18 of the '551 Patent. Compare '551 Patent 12:22-59, with'286 Patent 27:11-42. Additionally, claim 1 of the '286 Patent also describes steps for determining an interest rate for each client fund, *id.* at 27:43-48, calculating interest based upon the client funds as opposed to the client's pro rata share of the aggregate account, *id.* at 27:49-58, determining interest earned of each aggregate FDIC account, *id.* at 27:59-61, and posting the interest calculated for each client, *id.* at 27:62-65. Island provides that these additional steps allow for the application of varying interest rates to various client funds and the calculation of interest therefrom. Dkt. No. 114 pp 9-10.

---

[3] Despite Island's description, this limitation is found in the preamble of claim 18 of the '551 Patent.

3

**II.     Law**

Pursuant to 35 U.S.C. § 101, "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." "A claim falls outside § 101 where (1) it is directed to a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon, or abstract idea, and (2), if so, the particular elements of the claim, considered both individually and as an ordered combination, do not add enough to transform the nature of the claim into a patent-eligible application." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166–67 (Fed. Cir. 2018) (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014)) (cleaned up).

At step one, the court asks "what the patent asserts to be the 'focus of the claimed advance over the prior art.' " *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (quoting *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)). During this inquiry, the focus is on the claim language considered in the light of the specification. *Id.* (quoting *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). The analysis must not indulge in "overgeneraliz[ations]" resulting in "abstractions" "untethered" from the claim language. *Enfish*, 822 F.3d at 1337. Instead, the analysis "depends on an accurate characterization of what the claims require and of what the patent asserts to be the claimed advance. The accuracy of those characterizations is crucial" to the analysis. *TechSec*, 978 F.3d at 1294.

In cases involving improvements to computing technology and networks, the Federal Circuit has relied upon two inquires: (1) "whether the focus of the claimed advance is on a solution to a problem specifically arising in the realm of computer networks," and (2) "whether the claim

4

is properly characterized as identifying a specific improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function." *Id.* at 1293 (compiling cases) (cleaned up). It is insufficient for a patent to invoke a computer "merely as a tool" to execute an abstract idea. *Enfish*, 822 F.3d at 1335-36.

### III. Analysis

#### A. The '551 Patent

At step one of the § 101 analysis, the Court finds that claim 18 of the '551 Patent is directed to a particular method of managing client funds to circumvent federal banking regulations limiting withdrawals from FDIC accounts while simultaneously capitalizing on the interest rates associated with FDIC accounts. Without a doubt, the method navigates federal banking regulations. Nonetheless, the claim is directed to fundamental economic and accounting practices consistently deemed abstract by the Supreme Court and the Federal Circuit. *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 & n 5 (Fed. Cir. 2016) (compiling cases); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) ("No matter how much of an advance in the finance field the claims recite, the advance lies entirely in the realm of abstract ideas, with no plausibly alleged innovation in the non-abstract application realm."). Maintaining accounts, maintaining databases, transferring funds from one account to another, withdrawing funds, and updating the database based upon transfers and withdrawals all lie entirely in the abstract realm of fund management.

Island argues that claim 18 of the '551 Patent is directed to an improvement in computer systems because managing a plurality of client funds in an aggregate account was cost prohibitive prior to the claimed advance. Dkt. No. 114 pp 13-14. Be that as it may, Island fails to explain how claim 18 of the '551 Patent solves a problem specifically arising from computers or provides a

5

specific improvement in computer functionality. *TechSec*, 978 F.3d at 1293. For example, claim 18 of the '551 Patent does not improve data compression, *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), and does not improve data storage and retrieval, *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). Nor does claim 18 of the '551 patent require generic computers to operate in an unconventional manner to achieve an improvement in computer functionality. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299-1301 (Fed. Cir. 2016). Island's attempt to liken the database structure of each claim in suit to *Enfish* is merely a recitation of the database limitations without any analysis of how those limitations increase computer functionality. Dkt. No. 114 p 5-6. Moreover, the specification does not describe a problem with, or specific solution relating to, computer functionality. *TechSec*, 978 F.3d at 1293.

  Instead, the claimed advance is directed to a unique allocation of funds that makes it more efficient for a generic computer to perform basic accounting functions over aggregated client funds. Island confirms as much when describing the value of the patents in suit. Dkt. No. 114 p 2 ("[T]he Patents-in-Suit make clear that computerized deposit sweep systems already existed; the aim was to set forth inventive processes that [make] existing computer systems better, more efficient, and more accurate."). In other words, claim 18 of the '551 Patent uses generic computers to automate fundamental economic practices deemed abstract. Without a claimed improvement to computer functionality, claim 18 of the '551 Patent is directed to a set of instructions to apply fundamental economic activity with the assistance of an unspecified, generic computer. Such claims are abstract. See, *e.g.*, *Intell. Ventures I*, 838 F.3d at 1315. Simply because it was cost prohibitive to perform computerized deposit sweeps does not mean that claim 18 of the '551 Patent is directed to an improvement in computer functionality.

Island further argues that claim 18 of the '551 Patent is directed to eligible subject matter because it claims a specific and improved means of accomplishing a result, rather than the result itself. Dkt. No. 114 pp 28-29. Indeed, "[a] patent may issue 'for the means or method of producing a certain result, or effect, and not for the result or effect produced.' " *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (quoting *Diamond v. Diehr*, 450 U.S. 175, 182 n 7 (1981)). When a patent is directed to a means to produce a specific result, the Federal Circuit has instructed courts to determine whether the subject claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO*, 837 F.3d at 1314 (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016); and *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.,* 827 F.3d 1042, 1048 (Fed. Cir. 2016)); see also *SAP*, 898 F.3d at 1167-68 (compiling cases).

Claim 18 of the '551 Patent is clearly directed to a means of aggregating and managing a plurality of funds to circumvent federal banking regulations and capitalizing on high interest rates associated with FDIC accounts through the use of generic computer functionality. Island has not identified a specific means or method that improves computer functionality. At best, Island's arguments identify a specific means that improves aggregate account management, a fundamental economic activity deemed abstract, that merely invokes generic computer functionality. The same cannot be said of the case law relied upon by the Federal Circuit for the proposition espoused by Island. See *SAP*, 898 F.3d at 1167-68 (compiling cases). For example, claims identifying a specific means to cure rubber, to identify network hackers, to perform behavior-based computer virus scanning, and to produce lip synchronization of animated characters are not abstract results. *Diamond v. Diehr*, 450 U.S. 175, 187 (1981); *SRI International, Inc. v. Cisco Systems, Inc.*, 930

F.3d 1295, 1303 (Fed. Cir. 2019); *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299, 1304 (Fed Cir. 2018); *McRO*, 837 F.3d at 1314.

The fact that claim 18 of the '551 Patent applies these abstract steps narrowly to a plurality of client funds aggregated across a plurality of FDIC accounts is insufficient to convert claim 18 of the '551 Patent into patent eligible subject matter. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018) ("[A] claim is not patent eligible merely because it applies an abstract idea in a narrow way. For an application of an abstract idea to satisfy step one, the claim's focus must be something other than the abstract idea itself."). Additionally, novelty has no relevance within the § 101 analysis. *Intell. Ventures I*, 838 F.3d at (citing *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981); *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66, 91 (2012)).

Because the claims are directed to an abstract idea, the Court searches for an inventive concept sufficient to ensure that the '286 Patent amounts to more than a patent upon ineligible subject matter. *Alice*, 134 S.Ct. at 2355. "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018). "What is needed is an inventive concept in the non-abstract application realm." *SAP*, 898 F.3d at 1168. However, no inventive concept can be found within claim 18 of the '551 Patent.

Island's briefings are replete with assertions that claim 18 of the '551 Patent solves a difficult technical problem faced by prior art computers performing fundamental economic and accounting processes for client funds held in aggregate. Despite the effort, Island does not identify a specific improvement to computer functionality. Instead, Island only identifies a specific method

8

of managing aggregate accounts executable by a generic computer. Island's reliance on *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC* and *Data Engine Techs. LLC v. Google LLC* for commercial success is not persuasive. The claims in *BASCOM* improved network functionality by enabling remote filtration adaptable to individual user preferences. 827 F.3d 1341, 1350 (Fed. Cir. 2016). Similarly, the claims in *Data Engine Techs. LLC v. Google LLC* were directed to retrieving data from three-dimensional spreadsheets improving computer efficiency and were "applauded by the industry for improving computers' functionality as a tool…" 906 F.3d 999, 1008 (Fed. Cir. 2018). In both *BOSCOM* and *Data Engine*, industry praise attached to non-abstract ideas of improving computer functionality. As Island admits, claim 18 of the '551 patent "revolution[ized] … the cash management industry." Dkt. No. 114 p 30. Island does not argue or otherwise show that claim 18 of the '551 patent revolutionized computer functionality. Because "cash management" is abstract, claim 18 of the '551 Patent lacks an inventive concept.

### B. Remaining Patents

The above analysis applies with equal force to the remaining claims in suit. The permutations recited in claim 19 of the '821 patent and the additional limitations recited in claim 25 of the '821 patent and claim 1 of the '286 Patent are insufficient to convert the claims into eligible subject matter.

Starting with claim 19 of the '821 Patent, further limiting the first bank institution to include a first bank in its infrastructure and further limiting a different bank to a plurality of different banks does not contribute any indicia of inventive concept to the fundamental economic practices recited therein. Compare '551 Patent 12:25-27 & 30-31, with '821 Patent 14:19-20 & 26-27. Similarly, allocating funds into a first bank before allocating funds into a different bank without reference to a specified amount is an inconsequential permutation from allocating funds

with reference to a specified amount. Compare '551 Patent 12:39-49, with '821 14:35-43. Further, claim 25's recitation of the internet as a method to access fund data does not provide an inventive concept to the abstract idea of managing funds. Compare '821 claim 25 15:30-35, with, *e.g.*, *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011) (reasoning that the use of the internet to verify a credit card transaction does not meaningfully add to the abstract idea of verifying the transaction). Island does not present any § 101 eligibility argument specific to distinguishing the '821 Patent from the '551 Patent. Accordingly, claims 19 and 25 of the '821 are also directed to fundamental economic practices deemed abstract without any additional inventive concept.

Claim 1 of the '286 Patent is no different. The additional limitations of determining and applying an interest rate to individual funds held in aggregate, '286 Patent 27:43-48, calculating the respective interest of each individual fund over a period of time, *id.* at 27:49-58, calculating the interest earned by the aggregate FDIC account over the same period of time, *id.* at 27:59-61, and posting the interest earned by individual funds, *id.* at 62-65, are all fundamental economic and accounting activities deemed abstract and do not provide any additional inventive concept over the '551 Patent. Island's reliance on the prosecution history or *Island Intellectual Properties LLC v. Deutche Bank AG*, 2012 WL 386282 **7-8 (S.D.N.Y. Feb. 6, 2012) does not change this conclusion because both predate the *Alice/Mayo* framework and the subsequent developments cited in this report.

IV.     **Conclusion**

For the reasons discussed above, **IT IS RECOMMENDED** that defendants' motion for summary judgment to invalidate the claims in dispute, namely claim 18 of the '551 Patent, claims

19 and 25 of the '829 Patent, and claim 1 of the '286 Patent, for claiming patent-ineligible subject matter, Dkt. No. 92 as modified by Dkt. No. 182, be **GRANTED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 28th day of September, 2022.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE